## PEÑA v. VANCE.

A PART payment does not take a debt from the operation of our Statute of Limitations, unless such payment is evidenced by a writing signed by the party to be charged thereby.

Section thirty-nine of the Limitation Act excludes all acknowledgments and promises not in writing; and a promise implied from the fact of part payment constitutes no exception.

*Fairbanks* v. *Dawson* (9 Cal. 89) affirmed.

A memorandum indorsed upon an overdue bond, stating a receipt of a portion of the debt, and also extending the time and changing in some respects the terms of payment, signed by the obligee alone, but assented to by the obligor, is not a writing " signed by the party to be charged thereby," and does not affect the operation of the limitation statute.

If the signing of such a memorandum by the creditor and the assent to it by the debtor be viewed as a new and distinct contract for the payment of money, it would be a mere verbal contract, an action upon which would be barred by the lapse of two years from the time of payment fixed by its terms.

APPEAL from the Seventh Judicial District.

This action was brought to enforce a vendor's lien for the purchase money of certain lands conveyed, on the seventh day of November, A. D. 1853, by Peña, the respondent, to Vance, the appellant. The purchase consideration was $10,000 ; $3,050 was paid in cash, and the personal bond of Vance, payable in one year, was given for the balance of $6,950.

Nothing was paid upon the bond until November 6th, 1855. At this date the appellant and respondent met, by agreement, at the office of John Currey, Esq., in Benicia, and there, with his assistance as their mutual adviser, effected the arrangement which is evidenced by the memorandum indorsed on the bond—set forth in the opinion of the Court. Currey testifies that Peña was pressing for

Peña v. Vance.

his money, and that Vance was willing to pay a portion of it at that time, but desired an extension for the balance. The due-bill mentioned in the memorandum was given and subsequently paid by Vance. It appears by a subsequent receipt, indorsed on the bond, that on the tenth of November, 1856, Vance paid the interest, according to the terms of the memorandum, up to November 6th, 1856, and also $1,200 on the principal. Since that time nothing has been paid.

The action was commenced August 9th, 1860. The answer set up two defenses: one the Statute of Limitations, and the other a failure of title to the property for which the bond was given. The plaintiff had judgment, and defendant appeals.

*John Reynolds*, for Appellant.

I.  It is not contended that the cause of action upon the original bond survived at the commencement of this action, unless it was revived and extended by the indorsement of the sixth of November, 1855—it being payable more than five years before suit commenced.

The receipt indorsed on the bond on the sixth of November, 1855, does not take the case out of the operation of the Statute of Limitations.

1. It is not an acknowledgment or promise in writing, signed by the party to be charged thereby. (Wood's Dig. 49, sec. 31 ; *Fairbanks* v. *Dawson*, 9 Cal. 90.)

2. It is not such evidence of payment as to take the case out of the statute.

In the case of *Fairbanks* v. *Dawson* this Court held, that partial payment did not take a case out of the operation of the Statute of Limitations. In the case of *Barron* v. *Kennedy* (17 Cal. 576) this Court held—the Chief Justice delivering the opinion—that when a payment is evidenced by writing, signed by the party to be charged, such payment, thus proven, will take a case out of the statute. And, as I understand the two cases, *Fairbanks* v. *Dawson* and *Barron* v. *Kennedy*, they hold that a partial payment has the same effect as a promise or acknowledgment, and takes the case out of the statute, and that this fact, either of partial payment, or

an acknowledgment, or promise, must be proved by a writing signed by the party to be charged.

This receipt is signed by the plaintiff only, indorsed on the plaintiff's bond, and not signed by the defendant. No other evidence is given of a payment at this time, except the testimony of Mr. Currey, which is incompetent.

It may be contended that the giving of a due-bill by Vance was a payment evidenced by writing. This proposition is obnoxious to several objections:

1st. It did not operate as a payment—the payment depending upon parol proof. (*Griffith* v. *Grogan*, 12 Cal. 317; *Higgins* v. *Wartell*, 18 Id. 330.)

2d. The evidence that it was intended as a payment on this bond is not in writing, as in the case of *Barron* v. *Kennedy*. Both the object for which the due-bill was given and the payment of the same depended for proof upon other evidence, not in writing signed by the defendant.

3d. If the object of giving the due-bill or making partial payment could be proved otherwise than by a writing signed by the party to be charged, even then it would not avail to take this case out of the operation of the statute.

The receipt was indorsed on the bond four years and eight months before this suit was commenced; and the due-bill was paid soon afterwards, (it is presumed to have been paid when due) more than four years and seven months before suit commenced.

An acknowledgment does not revive the old debt, but is evidence of a new promise of which the former debt is the consideration. (*Danforth* v. *Culver*, 11 Johns. 146.)

When this new promise is proven by writing, signed by the party to be charged, it may take effect from a day future, according to the terms of the writing; but when a partial payment is the evidence of the new promise, it must necessarily take effect on the day of the payment, and will be again barred in four years from such payment. So that, admitting this partial payment to have been made and proven by competent evidence, the new promise thereby proven is itself barred.

It is contended by respondent's counsel that the testimony proves

a payment on the tenth of November, 1856 ; and that under the decision of the Court in the case of *Barron* v. *Kennedy* (17 Cal. 577) such payment operated as a renewal or as an acknowledgment of the indebtedness.   I understand the rule, as laid down in that case, to be as before stated, that the fact of payment, like any other acknowledgment, must be proved by a writing signed by the party to be charged, and cannot be proved in any other way. It is averred in the complaint that a payment was made in 1856, but it is not averred that any written memorandum whatever was made of it.

II.   The indorsement of the sixth of November, 1855, cannot be upheld as a new contract, on the part of plaintiff to extend the time of payment, and on the part of defendant to pay the sum of $5,200 on the sixth of November, 1856.

1. It would be void under the Statute of Frauds, so far, at least, as it affects the lien on the real estate, to foreclose which this action was brought.   No estate or interest in lands can be created, etc., except by operation of law, or by deed, or conveyance in writing, signed by the party to be charged thereby.   (Wood's Dig. 106, sec. 6.)

2. This agreement did not operate to stay the commencement of plaintiff's suit on the bond for one year, as supposed.   It not being signed by Vance and, therefore, not binding upon him it was not binding upon Peña.   (*Lester* v. *Jewett*, 12 Barb. 502–505.)

The assumption in the opinion of the District Judge that Vance promised to pay is based upon the testimony of Mr. Currey, who swears that he acted for both Vance and Peña.   It may be that Mr. Currey's testimony is sufficient to prove a parol promise to pay $5,200.   But such parol promise, if supported by a sufficient consideration, having no relation to the old debt, would itself be barred in two years from the sixth of November, 1856—nearly two years before this suit was commenced.

I have assumed that a verbal promise, based upon an old debt as a consideration, would be binding for two years.   But this cannot be so, for it would be a complete evasion of the Statute of Limitations. Every new promise which operates to take a case out of the statute is a new contract based upon the old debt as a consideration.

If, however, the forbearance of Peña is a consideration sufficient to support Vance's promise to pay the $5,200, still it is no more than a parol promise, and barred long before the commencement of this suit.

If it is relied on, however, as an agreement in writing, then oral testimony is incompetent to prove that Vance agreed to it. Giving the utmost latitude to this testimony, it only proves a verbal promise on the part of Vance.

But, finally, suppose that this was a valid contract on the part of Peña to forbear to sue for one year, its only effect would be to suspend his action for one year, and thus add one year more to the original period. In this view of the case, the action was barred on the seventh of November, 1859, and this action was not commenced until August 9th, 1860. It cannot, however, have this effect without directly contravening the thirty-first section of the Statute of Limitations.

*W. W. Stow*, also for Appellant, argued upon the question of failure of title to the property, which point is not referred to in the opinion.

*Whitman & Wells*, for Respondent.

I. . It is contended that respondent is barred of his action by the Statute of Limitations. Even under the strict rule, as held in this State, this position is untenable. Chief Justice Field, in the case of *Barron* v. *Kennedy*, (17 Cal. 577) uses the following language : " Part payment has always been held sufficient to take the debt on which it was made out of the statute. Unless accompanied at the time with qualifying declarations or acts on the part of the party making the payment, it is deemed an unequivocal admission of a subsisting contract or liability, from which a jury is justified and bound to infer a new promise. The authorities are uniform to this point. And it matters not whether the payment be upon the principal or interest of the debt. And there is nothing in the thirty-first section of our Statute of Limitations which alters this well settled rule. * * * This section does not purport to make any change in the effect of acknowledgments or promises, but

simply to alter the mode of their proof, and is directed, principally at least, against the admission of oral acknowledgments and promises, which constituted a fruitful source of embarrassment in the Courts of other States. Its chief object was to require that to be evidenced by writing which previously consisted, of verbal declarations only."

Now, in this case we have the two writings indorsed on the bond—not signed by Vance it is true, but executed in his presence, and accepted by his acts—signed by the other party to be bound, and supervised, in one instance, by Mr. Currey acting for Peña and Vance jointly, and in the other, by Mr. Swan acting as the attorney of Vance, and by his direction. Again, there is proof that, at the time of the first memorandum, Vance made and delivered his due-bill, which he afterwards paid.

There is no necessity, however, to discuss this point at length. There is no question, properly, here of the Statute of Limitations or the Statute of Frauds. The plain proposition here presented is, can a creditor give an indulgence to his debtor ? Undoubtedly he may, either orally or in writing, subject, of course, to all risks of releasing copromisors or indorsers. The bond or obligation in this case, upon which indulgence was granted, though overdue, was not barred by the statute. It would not have been so barred, without the indulgence, until November, 1858. Prior, then, to this date the creditor, at the solicitation of the debtor, agrees, in writing, for a valuable consideration, to accept a portion of the sum due, give time for the payment of the balance, and reduce the rate of interest. The debtor accepts this indulgence ; both parties subsequently act upon it. The time of payment was extended for one year from November 6th, 1855. Peña would have been unable to sustain an action against Vance until the expiration of the extended time, and it does not lie in the mouth of Vance now to deny the agreement, the benefit of which he has reaped. The proposition is too clear for argument.

II. But another rule may be invoked in respondent's aid. All the agreements in question were but parcel of and contingent upon an agreement of a higher nature—the conveyance of the land. The Statute of Frauds has in such case no application. The rule

is thus laid down by an elementary writer : " Where a deed has been actually executed, or a title to the land in any way passed, agreements between the parties as to pecuniary liabilities growing out of the transaction, but not going to take any interest in land from the grantee, are not affected by the statute.    Thus, an agreement for releasing damages, for the taking of land for public uses, or for the use of it by statutory privilege, is binding without writing.    And so, manifestly, is any special agreement to pay the price of land previously conveyed."    (Browne on Stat. of Frauds, 274, sec. 270.)

COPE, J. delivered the opinion of the Court—NORTON, J. concurring.

The complaint alleges that in 1853 the plaintiff conveyed to the defendant a tract of land in the county of Solano, taking a bond for the payment of the purchase money.    The bond is set out in full, and is conditioned for the payment of the money within one year from the date thereof, and indorsed upon it is a memorandum, as follows : " Received on the foregoing bond the sum of two hundred and fifty dollars, four cows at five hundred dollars, and a duebill, payable in ten days, for $1,000, leaving $5,200, which the said Vance, named in said bond, is to pay interest upon at the rate of thirty dollars per month ; and said sum so remaining due is to be paid by said Vance to said Peña in one year from this day.    Said interest of thirty dollars is to be paid at the end of each month."

This memorandum is dated November 6th, 1855, and is signed by the plaintiff ; and the evidence shows that it was assented to by the defendant, who subsequently acted upon it, but did not sign it. He paid the interest until the sixth of November, 1856, at which time he also paid a portion of the principal—the balance of the principal (with the interest which has since accrued) being still due.    The suit was commenced in August, 1860 ; and the defendant relies upon the Statute of Limitations as a bar to the action.

Section thirty-one of the statute provides, that " no acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this statute, unless the same be contained in some writing, signed by the party to be charged thereby."

The first question that presents itself is, whether cases of part payment are included in the provisions of this section, or whether these provisions are to be limited in their application to cases where the acknowledgment or promise is evidenced by words only and not by acts. In *Fairbanks* v. *Dawson* (9 Cal. 89) the same question came up for consideration, and it was held—Mr. Justice Field dissenting—that part payment, in the absence of any written acknowledgment or promise, was not sufficient to take the case out of the statute. In *Barron* v. *Kennedy* (17 Cal. 574) the question was again presented; but as the payments in that case were evidenced by writing, the rule laid down in the former case was held not to be applicable—part payment being regarded as evidence of a new promise. "The statute," said the Court, "does not purport to make any change in the effect of acknowledgments or promises, but simply to alter the mode of their proof; and is directed, principally at least, against the admission of oral acknowledgments and promises, which constituted a fruitful source of embarrassment in the Courts of other States. Its chief object was to require that to be evidenced by writing which previously consisted of verbal declarations only; and in *Fairbanks* v. *Dawson* this Court held, that it also covers an acknowledgment by payment. The counsel for the plaintiff asks us to reconsider this decision, and has presented a strong argument against its correctness. The present case does not, however, require any departure from it." The language used seems to imply that in a proper case the Court would reconsider the question, and suggests such doubts as to the correctness of the decision as render it an insecure guide in future transactions. On examination of the matter a second time, we are satisfied that the statute intended to exclude all acknowledgments and promises not in writing; and that a promise implied from the fact of part payment cannot with any propriety be made an exception. The words of the statute are plain and unambiguous, and it is our duty to give effect to them, and carry out the intention of the Legislature as that intention has been expressed. Interpretation is only to be resorted to in cases of ambiguity, and it would be an evasion of the statute to hold that, notwithstanding the generality of the terms employed, cases of part payment are not included. The

words are : " No acknowledgment or promise ; " and part payment is mere evidence of a promise, which is required to be in writing, and is not to be inferred from circumstances of which there is no written evidence.   The English Statute, (9 Geo. IV) commonly known as Lord Tenterden's Act, is expressly limited to acknowledgments and promises in words only, and provides that nothing therein contained shall alter, take away, or lessen the effect of part payment.   Our statute contains no provision of this character ; nor is it limited to acknowledgments or promises in words only; its provisions are general, and exclude all acknowledgments and promises the evidence of which rests in parol merely.   In *Willis* v. *Newham* (3 Younge & Jer. 518) it was held, however, that the English Statute changed the rule of evidence, and that parol proof was inadmissible even in cases of part payment.   This decision, though followed for many years, was finally overruled, but simply upon the ground that the statute was so worded as to exclude cases of part payment.   Under a similar statute in Massachusetts, verbal testimony has been held to be admissible ; and this, we believe, is the prevailing rule in other States where the statutes are the same.   In *Williams* v. *Gridley* (9 Met. 482) the decision was based upon the clause saving the effect of part payment, and the opinion shows that but for this clause the decision would have been different.   In view of the comprehensive language of our statute, and the fact that there is no provision taking from its operation cases of part payment, we are of opinion that *Fairbanks* v. *Dawson* was correctly decided.

The next question is, whether the subsequent agreement, of which there is no written evidence except the indorsement upon the bond, is sufficient to take the case out of the statute ?   The Court below held that the statute had run as against the bond, but that the subsequent agreement was a good and sufficient contract in itself, and furnished a right of action independent of the bond.   Four years had not elapsed from the time the money became due under the agreement, and it was held that, treating the action as an action upon the agreement, the period of limitation had not expired.   The statute commenced to run, of course, when the money became due ; and whether the limitation had expired or not depends upon whether

the agreement is to be regarded as an agreement in writing or by parol.  The only writing is the memorandum signed by the plaintiff; and it is clear that this alone is not sufficient to establish the agreement—the assent of the defendant being necessary to make it binding upon him.  On his part, therefore, the agreement is not in writing; and the only effect which can be given to it is to treat it as a verbal contract, and so treating it, the right of action is barred by the statute.  The counsel for the plaintiff do not claim, however, that the case can be sustained upon this ground, but rely upon the bond as the basis of the action, and upon the agreement as taking the case out of the statute.  In this point of view the case is too plain to admit of argument, for the statute recognizes no acknowledgment or promise unless in writing, and it is immaterial that the promise was made in consideration of forbearance.  The promise was to pay the debt, and the statute undoubtedly intended that such a promise, in order to be available as against the limitation imposed, should be in writing.

The judgment is reversed and the cause remanded.