## T. WILCOX *et al.*, RESPONDENTS, *v.* JOHN T. WILLIAMS, APPELLANT.

CONTRACTS—LAW OF PLACE OF PERFORMANCE. A personal contract, which is, by its terms, to be performed in some place other than where it is made, is to be governed by the law of the place of performance.

STATUTES OF LIMITATION GENERALLY AFFECT THE REMEDY AND NOT THE RIGHT. Statutes of Limitation apply only to the remedy on a contract, and not to the right or obligation; so that, though the statutory bar has fully run against a contract where made, yet, if it is to be performed at another place, and it is not there barred, it may be enforced, provided the statute has not absolutely, by its terms, extinguished and nullified the claim itself.

PROMISSORY NOTE PAYABLE IN CALIFORNIA OR NEVADA. A promissory note, made in California, and payable "in California or Nevada," can at payer's option be paid in either State, and therefore cannot be construed into a contract to be performed in Nevada, so as to bring it within the purview of the rule touching the place of payment.

EFFECT OF NEW STATUTES OF LIMITATION. The Statute of Limitations in force at the time of suit brought governs the remedy on a contract: *provided*, in case of the passage of a new statute after the making of the contract, a reasonable time be given to bring suit.

CONSTRUCTION OF NEW STATUTE OF LIMITATIONS. The Statute of Limitations of 1862, (Stats. 1862, 82) which provided that suit should be brought on a contract made without the State within six months after the cause of action accrued, was amended in 1867 (Stats. 1867, 85) so as to extend the period of limitation on such contracts to two years: *Held*, that after the passage of the latter Act suit might be brought on any contract made out of the State, the cause of

Wilcox *v.* Williams.

action on which had accrued within two years, though it might have been barred under the former statute.

STATUTE OF LIMITATIONS—NEW PROMISES. The Statute of Limitations (Stats. 1861, 31) excludes an acknowledgment or promise not in writing as evidence of a new or continuing contract to take a case out of the operation of the statute.

STATUTE OF LIMITATIONS—PART PAYMENT. Part payment is not sufficient as a new promise to take a case out of the operation of the Statute of Limitations.

STATUTE OF LIMITATIONS—ACKNOWLEDGMENTS MUST BE DISTINCT. An acknowledgment, to take a case out of the operation of the Statute of Limitations, must be clear, explicit, and direct to the point that the debt is due.

STATUTE OF LIMITATIONS—BURDEN OF PROOF ON NEW PROMISE. If a plaintiff, relying upon an acknowledgment in writing to take a case out of the operation of the Statute of Limitations, proves a general acknowledgment of indebtedness, the burden of proof is on the defendant to show that it related to a different demand from the one in controversy.

STATUTE OF LIMITATIONS — CONDITIONAL NEW PROMISE. A promise to pay a debt when able, is not sufficient of itself as an acknowledgment or new promise to take a case out of the operation of the Statute of Limitations.

APPEAL from the District Court of the Second Judicial District, Douglas County.

This was an action brought by T. Wilcox and J. A. Brown, partners, doing business in the City of Placerville, California, under the name and style of Wilcox & Brown, against John T. Williams, on the promissory note set out in the opinion. Suit was commenced on May 3d, 1869. Findings and judgment for plaintiffs, and appeal therefrom.

*Clayton & Davies,* for Appellant.

I. The cause of action on the note was extinguished by the statute limiting the time of commencing civil actions. (Stats. 1867; 9 Cal. 89; 21 Cal. 149; 22 Cal. 102.)

II. The Court below erred in deciding that the note is subject to the same laws for the enforcement of its payment that it would have been had it been made in this State.

III. There was no acknowledgment of or new promise to pay said note after the twenty-first of July, 1868. (1 Peters, 351; 6 Watts, 219; 8 Conn. 185.)

IV. The Court below erred in deciding that the burden of proof rested on the defendant to show that the letter of the first of

June, 1868, was not in relation to the debt intended to be secured by said note, and the fifty dollars thus remitted was not to be applied on said note.

V.   The Court below errred in rendering judgment for the plaintiffs, for the reason, that if any new promise had been made by the defendant to the plaintiffs to pay the debt mentioned in the complaint, plaintiffs' action should have been based on the new promise.   (*McCormick* v. *Brown*, Cal., April Term, 1869.)

VI.   The full time required by law to bar this cause of action had run after the time of the passage of the Act of March 5th, 1867, and the commencement of this suit.   (6 Cal. 430 ; 10 Cal. 373.)

*Clarke & Wells*, for Respondents.

I.   Defendant pleads no " Act defining the time of Commencing Civil Actions," save the Act of March 5th, 1867, which was passed after the giving of the note sued upon, and is not retroactive. (4 Cal. 127 ; 1 Cal. 55 ; 28 Cal. 320 ; 9 Cal. 374 ; 6 Cal. 433.)

II.   If a party seek the benefit of any Statute of Limitations he must bring that particular statute to the notice of the Court by special plea.   (19 Cal. 85 ; 19 Cal. 476 ; 19 Cal. 423 ; 12 Cal. 311 ; 18 Cal. 67 ; 25 Cal. 89 ; 28 Cal. 106 ; 23 Cal. 16.)

III.   But were we to admit that the Statute of Limitations applicable to the case, if any be so, is sufficiently pleaded to be entitled to consideration by the Court, still the facts do not bring the case within the statute, because :

1st.   Of part payment and written admissions of defendant to plaintiffs of the continuance of the contract.   (17 Cal. 574; 14 Pick. 387 ; 2 Pick. 368 and 581; 3 Pick. 291 ; 4 Pick. 109 ; 21 Maine, 176 ; Chitty on Contracts, 647 ; 19 Conn. 590 ; 6 Johnson, 270 ; 4 Johnson, 461 ; 2 Foster's N. H. 219.)

2d.   The contract, though technically made in California, is, by its written terms, payable in this State, and is therefore governed by the laws of this State the same as if made here.   If parties in making a contract express that it may be executed in another country or State than the one in which made, they place themselves and the contract under the operation of the law of the country or State

where the contract is to be executed. (See Burrill's Law Dict., title *Lex loci contractus;* Story on Conflict of Laws, Secs. 242 and 280, and authorities there cited.) And in this respect the several States of the Union, on principles of justice and comity, are to one another as the different nations of the civilized and enlightened world are to one another. (See 4 Conn. 517; 8 Peters, 130.)

IV. The note sued upon being in terms payable in Nevada, is subject to our laws for the enforcement of the contract. (See 5 Johns. 239; 4 Cow. 508; Story on Prom. Notes, Sec. 165; 2 Kent's Com. 393, 394, and 459; 13 Pet. 65; B. Monr. 578.)

By the Court, WHITMAN, J.:

Appellant made and delivered his promissory note to respondents as follows:

"PLACERVILLE, July 11th, 1866.

"Ten (10) days after date without grace I promise to pay to the order of Wilcox & Brown two thousand seven hundred forty-nine ($2,749$\frac{86}{100}$) eighty-six one hundredth dollars, for value received, with interest at ten (10) per cent. per annum until paid, in U. S. gold coin, in California or Nevada.

JOHN T. WILLIAMS."

The evidence shows that it was so made and delivered, at the time and place stated, for a debt previously incurred at such place.

The complaint charges, and the answer does not deny, that payments were made on the note as per indorsements thereon, thus: "Paid November thirteenth, (13th) sixty-seven, (67) one hundred dollars; June second, sixty-eight, (68) fifty (50) dollars."

Appellant pleaded the Statute of Limitations, and to support their action respondents read in evidence the following letters:

"WILLIAM'S RANCH,
Carson Valley, June 1st, 1868.
"Mr. T. WILCOX—

"*Sir:* I am still alive, and that is about all too. I shall be over in about three weeks from this time, and I shall be certain to come and see you. I send you a check of fifty dollars now, and

hope I can do something better for you then.   I still remember
past favors   *   *   *."

"GENOA, April 18th, 1869.
"Mr. T. WILCOX—

"*Sir :* I have got the thing agoing to the best advantage to try
to raise some money for you.   Times are very dull.   Money is
scarcer than I ever saw it in my life.   Hay trade is dull, but is
improving a little.   I shall be over as soon as the roads will permit
of a team to come, after freight and a little grub, and I will do the
best I can for you.   I think I will be able to give you a lift—you
can be sure I will do all in my power towards it, for I feel ashamed
of it a standing so long ; but hard times come a little too soon for
me this time.   But you have favored me very much, and I still
hope I may be able to repay you for all of it soon.   *   *   *   *
*   *   *   With this I close, by feeling under every kind of obliga-
tions to you for past favors."

The case was tried by consent without a jury, and respondents
had judgment as prayed, for these reasons assigned by the District
Judge :
"The defendant pleads the Statute of Limitations.   The plea is
not good, for two reasons : First, the note was made payable and is
payable in this State, and is subject to the same laws for the
enforcement of its payment that it would have been had it been
made in Nevada ; second, the preponderance of the evidence in
the case, as shown by the letter of June 1st, 1868, is, that he,
defendant, then and thereby acknowledged the continuance of the
contract, and his obligation to pay the note ; for he then sent them,
the plaintiffs, fifty dollars, and promised more soon thereafter ; and
if that fifty dollars was not to be applied upon this note and debt,
and if what he, defendant, said in said letter did not refer to this
note and debt, he could and should have shown that fact on the
trial, as he was sworn on his own behalf; and when questioned by
counsel for plaintiffs on that point objected to answering, and was
not compelled so to do."

Several specifications of error are assigned, which need not be
considered separately, but will be passed upon generally, in the

different propositions considered in reviewing the judgment appealed from.

The rule is, that a personal contract by its terms to be performed in some place other than that where the contract is made, is to be governed by the law of the place of performance; because from the language of the contract, it is presumed that the parties thereto intended to be governed by such law; and as far as a promissory note is concerned, the contract of which it is the evidence, is to be performed where payment thereof is to be made; but this rule applies only to the rights and obligations resting upon, or arising from, the contract; the law of the forum always governs the remedy in England and this country; and the Statute of Limitations applies only to a remedy, and not to a right or obligation. It was at one time doubted whether this rule would apply when the statutory bar had fully run against a contract when made; but the better opinion now is, that such fact makes no difference, and that the rule is unchanged, except when such statute absolutely by its terms and conditions extinguishes and nullifies the claim itself.

It would seem that the District Judge had not this distinction as to the rule of right and remedy in mind, when he found that the note in suit being payable in this State, was "subject to the same laws for the enforcement of its payment," as if here made; as thereunder he applies the Statute of Limitations governing contracts made in the State of Nevada, when, in fact, no matter where the contract was made, the Statute of Limitations of the forum would govern the remedy of collection by suit.

The rule is so well settled that there can be no question thereabout at the present day. (Parsons on Notes and Bills, Vol. 2, 382; Angell on Limitations, 56–67; *British Linen Co.* v. *Drummond*, 10 B. & C. 903; *Williams* v. *Jones*, 13 East, 221; *Bank of the United States* v. *Donnelly*, 8 Peters, 361; *Pearsall et al.* v. *Dwight et al.*, 2 Mass. 84; *Putnam* v. *Dike*, 13 Gray, 535; *Thibodeau* v. *Lavasseur*, 36 Maine, 362; *Medbury* v. *Hopkins*, 3 Conn. 472; *State* v. *Swope*, 7 Ind. 91; *Hendricks* v. *Comstock*, 12 Ind. 238; *Ruggles* v. *Keeler*, 3 Johns. 263.)

As a matter of fact, however, the note is not payable at any particular place; the promise is to pay "in California or Nevada." It

could, at the payer's option, be paid in either State. He could not be expected to seek to pay in any other place, but payment on his default might be anywhere enforced ; so that it cannot be properly said, that the note is to be treated with reference to the Statute of Limitations as if made in Nevada, because : First, the rule invoked has no application to such statute ; and, secondly, the note was in fact made in California, and the language used as to the place of its payment is too general to be construed into a promise to pay at a particular place, and thus bring the note within the purview of the rule touching place of payment.

It is urged by counsel for respondent, in escape from this position, that if the law be as stated, then the Statute of Limitations in force at the time of making the contract must govern, and as that is not pleaded the plea is bad ; but the opposite rule is settled upon the principle governing the application of the Statute of Limitations, that it affects only remedy and not right ; therefore, in England and this country, it is held that the statute in force at the time of suit brought must always govern : *provided*, only, that in the case of the passage of a new statute after contract made, reasonable time must be given to bring suit. (2 Parsons on Notes and Bills, 633 ; *State* v. *Swope*, 7 Ind. 91 ; *State* v. *Clarke*, 7 Ind. 468 ; *Brigham* v. *Bigelow*, 12 Met. 268 ; *Montgomery* v. *Chadwick*, 7 Iowa, 114 ; *Gilman* v. *Cutts*, 3 Foster, N. H., 376 ; *Fiske* v. *Briggs*, 6 R. I. 557.)

The note in suit being made and delivered in California, upon a debt there previously incurred, was subject at that time to the provisons of the Nevada statute of 1862 touching such contracts : *provided*, suit had been brought thereon in this State during the existence of such statute. Its language is as follows :

"An action upon any judgment, contract, obligation, or liability, for the payment of money or damages, obtained, executed, or made out of this Territory, can only be commenced within six months from the time the cause of action shall accrue." Thereunder the note would have been barred January 21st, 1867.

On March 5th, of the year last named, the Legislature made this amendment: "An action upon a judgment, contract, obligation, or liability, for the payment of money or damages obtained,

made, executed, or incurred out of this State, can only be commenced as follows:  *   *   *   within two years, in all other cases, after the cause of action accrued."

This then is the governing statute in this case, unless it follow that the note being absolutely barred before the passage of this amendment, it could not be in any manner affected thereby; but no party is compelled to plead the statute of limitations; no Court will infer from lapse of time apparent on the face of pleadings, that the statute has run. It must be brought affirmatively to the notice of the Court by the party seeking its protection, therefore it may be waived; and in the case at bar if it had been competent to have pleaded a statute repealed before suit brought, and before remedy sought in this forum, applicant must be considered to have waived the statute of 1862, and elected to plead that of 1867.

If this be not so, then another vexed question, and one claimed to be fatal to respondent's present right of recovery, arises; for the bar of the statute having absolutely run against the note before there was any pretense of a payment, it might be claimed, as it is by counsel for appellant, that this action should have been upon the new promise.

Authorities differ upon the question. In the case of *McCormick v. Brown,* (Cal. April Term, 1869) this language is used: " When the creditor sues after the statute has run upon the original contract, his cause of action is not the original contract, for his action thereupon is barred, but it is the new promise. There are many authorities the other way; some holding that the new promise takes the case out of the statute, others that it removes the bar of the statute, and others still, that it revives the original contract. But the better opinion is that the action is sustainable only upon the new promise, the original contract, or the moral obligation arising thereupon, binding *in foro conscientiæ,* notwithstanding the bar of the statute being the consideration for the new promise." The weight of authority is clearly against the rule established in California. (Angell on Limitations, 232, Sec. 231; Parsons on Notes and Bills, Vol. 2, 653, note *e.*) It is proper to notice the objection though not necessary to the decision of the case, for the reason that no doubt is entertained either that the statute of 1862 was in no way

applicable; or if applicable, then that appellant had the right to plead either statute he pleased, or neither if he so chose; and for the further reasons, which will appear in the consideration hereinafter touching the effect of the so-claimed new promises, acknowledgments, and payments.

What was the effect of the payments made, will be examined without reference to the time when they were made—whether before or after the bar of the statute had fallen—as that element in the view taken of this case does not properly occur, and will not be noticed further than as above.

The statute of this State is identical with that of California: "No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this statute, unless the same be contained in some writing signed by the party to be charged thereby."

To the decisions of that State one then naturally turns for light. *Pena* v. *Vance* is the leading case, and has been followed in California since pronounced. It clears away the doubts suggested by *Barron* v. *Kennedy*, (17 Cal. 574) and correctly decides the meaning of the statute. Justice Cope, delivering the opinion of the Court, well says:

"On examination of the matter a second time, we are satisfied that the statute intended to exclude all acknowledgments and promises not in writing, and that a promise implied from the fact of part payment cannot with any propriety be made an exception. The words of the statute are plain and unambiguous, and it is our duty to give effect to them, and carry out the intention of the Legislature as that intention has been expressed. Interpretation is only to be resorted to in cases of ambiguity, and it would be an evasion of the statute to hold that, notwithstanding the generality of the terms employed, cases of part payment are not included. The words are: "No acknowledgment or promise;" and part payment is mere evidence of a promise which is required to be in writing, and is not to be inferred from circumstances of which there is no written evidence. The English statute, (9 Geo. IV) commonly known as Lord Tenterden's Act, is expressly limited to acknowledgments and promises in words only, and provides that noth-

ing therein contained shall alter, take away, or lessen the effect of part payment. Our statute contains no provision of this character; nor is it limited to acknowledgments and promises in words only; its provisions are general, and exclude all acknowledgments and promises the evidence of which rests in parol merely." (*Pena* v. *Vance*, 21 Cal. 142; *Heinlin* v. *Castro*, 22 Cal. 100; *Fairbanks* v. *Dawson*, 9 Cal. 89.)

Examination of the statutes of the several States of this Union, will show that in none is the language used upon this head the same with that in the statutes of California and Nevada; or, if similar, there is some qualifying clause either identical with that of the statute, (9 Geo. IV) or of sufficient force to alter the clear meaning of the statutory language of the States last named; and it will be found that the decisions are based upon the statutory provisions, or the English rule. Take for instance the statute of Massachusetts as commented on in *Williams* v. *Gridley*. Reciting a clause of the statute similar to that of this State, Dewey, J., says: " It is quite obvious that this enactment has introduced a material change in the effect to be given to the statute of limitation of personal actions. It has, prospectively, legislated out of the judicial forum those numerous and somewhat perplexing cases of alleged new promises, either express or implied, sustained by oral admissions and statements by the party sought to be charged. Thus far the statute is plain as to the construction to be given to it. The question arises upon the further provision contained in section seventeen : ' Nothing contained in the four preceding sections shall alter, take away, or lessen the effect of the payment of any principal or interest made by any person.' (*Williams* v. *Gridley*, 9 Met. 482.) The only inference to be drawn from the opinion is, that in lack of section seventeen the decision would have been as in California. When Legislatures have so industriously excluded language settled by numerous decisions, it would be trifling with their action to hold it without meaning. If the Courts wrongly decide and fail to express the legislative intention, which seems too clear for doubt, additional enactments can correct the error.

It is contended that, aside from the payments, there are acknowledgments and promises in writing. The District Judge, in his

findings, refers to the letter of June 1st, 1868. There are two in the evidence, which will both be examined to ascertain if they contain anything to sustain the judgment measurably predicated thereon.

There is no principle better settled than that an acknowledgment to take a case out of the statute, must be clear, explicit, and direct to the point that the debt is due. (Parsons on Notes and Bills, Vol. 2, 649; Angell on Limitations, 217; *Bell* v. *Morrison et al.,* 1 Pet. 351; *Venris* v. *Shaw,* 14 N. H. 422; *Berghaus* v. *Calhoun,* 6 Watts, 219; *Burr* v. *Burr,* 26 Penn. State, 284; *McCormick* v. *Brown,* Cal., April Term, 1869; *Hart* v. *Prendergast,* 14 M. & W. 741.)

It has been held in some cases that such acknowledgment must clearly appear to relate to the identical debt or demand which is sought to be recovered upon the strength of it; but the preponderance of authority is the other way. And it has been said " that where the plaintiff proves a general acknowledgment of indebtment, the burden of proof is on the defendant to show that it related to a different demand from the one in controversy." (*Carr's Adm'r* v. *Hurlburt's Adm'x,* 44 Mo., 10 White, 264; see also 2 Greenl. Ev., Sec. 441; *Whitney* v. *Bigelow,* 4 Pick. 110; *Bailey* v. *Crane,* 21 Pick. 323; *Woodbridge* v. *Allen,* 12 Met. 470; *Frost* v. *Bengough,* 1 Bing. 266.) So the rule was properly stated by the District Judge in this case, had the facts warranted its application. It is, however, impossible to gather from the language of the letters any clear, explicit, or direct acknowledgment of any indebtedness, or, really, any definite acknowledgment whatever. Their language may as well, and perhaps better, apply to some favor the writer intends to show the person to whom they are addressed, in return for past favors from him, as to any debt he owes. They are not even directed to the payers of the note, but to one only; and the strongest expression used is: " I feel ashamed of it a standing so long."

No such vagueness meets the requirements of the law. Conjecture, aided by outside circumstances, might fix a meaning to these letters in consonance with the finding; but such conjecture, or such aid, is improper; the acknowledgment must point itself; it cannot be inferred, for its only purpose is as a base upon which to

raise a promise, and it is not permissible to infer a foundation for the ultimate inference; and while the law allows a promise to be inferred from a proper acknowledgment, it draws the inference only in the absence of any express promise, either absolute or conditional, and considers the purpose of the acknowledgment always as extinguished by any accompanying words of promise.

What is the language of these letters? "I send you a check of fifty dollars now, and hope I can do something better for you then." "I have got the thing agoing to the best advantage to try to raise some money for you." "I will do the best I can for you. I think I will be able to give you a lift; you can be sure I will do all in my power towards it." "I still hope I may be able to repay you for all of it soon."

If any promise is expressed, by any or all the words recited, it is one conditioned upon ability. The language would seem to imply nothing but a hope, concerning some matter conjectural; but give it the strongest construction which could be claimed by the most sanguine, and at best it amounts only to a conditional promise. Such promise does not correspond with the complaint, and waiving that objection, could only be enforced upon proof of ability.

Without specially examining the many decisions, look at one of the earliest and one of the latest, holding this doctrine. In *Tanner* v. *Smart*, proof was, that the note was produced to the defendant, and payment of it demanded, and that the defendant said: "I cannot pay the debt at present, but I will pay it as soon as I can." There was no proof of any ability on the part of the defendant to pay the debt, and after argument of a rule *nisi* for a new trial, the plaintiff having had judgment, the rule was made absolute: Tenterden, C. J. saying, among other things, in support of his action: "The promise proved here was 'I'll pay as soon as I can;' and there was no evidence of ability to pay, so as to raise that which in its terms was a qualified promise into one which was absolute and unqualified. Had it been in *terms*, what it is in *substance*, 'prove that I am able to pay and then I will pay,' it would have been what the promise was taken to be, in *Flaylin* v. *Hastings*, a conditional promise; and when the proof of ability should have been given, but not before, an absolute one. Upon a general

acknowledgment, where nothing is said to prevent it, a general promise to pay may, and ought to be, implied ; but where the party guards his acknowledgment, and accompanies it with an express declaration to prevent any such implication, why shall not the rule ' *expressium facit cessare tacitum*,' apply." (*Tanner* v. *Smart*, 6 B. & C. 605.)

In *Bidwell* v. *Rogers*, a letter was introduced from the defendant, written in answer to one from plaintiff, saying : " I do not know when I can come and see you, but I will try to as soon as I can, and will pay you as soon as I can." Verdict being directed for defendant, and exceptions taken, overruling them, Chapman, J. pronounces the opinion of the Court, thus : " If the letter attached to the deposition had been proved, it would not have been sufficient to avoid the operation of the Statute of Limitations. It contains no reference to the note, or absolute promise to pay the plaintiff what is due to him ; but a promise to come and see him when he can, and to pay him when he can ; and no proof was offered of his ability to pay. (*Bidwell* v. *Rogers*, 10 Allen, 438 ; see also, *Bell* v. *Morrison*, 1 Peters, 351 ; *Haydon* v. *Williams*, 7 Bing. 163 ; *Hart* v. *Prendergast*, 14 M. & W. 741 ; *Hancock* v. *Bliss*, 7 Wend. 267 ; *Wakeman* v. *Sherman*, 5 Seld. 85 ; *Bush* v. *Barnard*, 8 Johns. 407 ; *Pritchard* v. *Howell*, 1 Wis. 131 ; *Manning* v. *Wheeler*, 13 N. H. 486.)

As the questions involved in this opinion are new in this State, though long since determined elsewhere, authorities have been somewhat numerously cited, culled from a multitude, tending to elucidation, and the weight thereof is conclusive against a recovery by respondent upon the present record. The statute was well pleaded, and nothing has been shown sufficient to remove its bar.

The judgment of the District Court is reversed, and the cause remanded.