# CHARLESTON.

QUARRIER'S ADM'R *v.* QUARRIER'S HEIRS *et al.*

Submitted February 12, 1892.—Decided March 26, 1892.

1. PROMISSORY NOTES AND BILLS OF EXCHANGE—ENDORSEMENT.

A note made by the Splint Coal Company to Laidley bears upon its back indorsed first the name of Laidley, next the name of Quarrier, and is in the hands of an assignee. The paper and indorsments import that Laidley is bound as first and Quarrier as second assignor. Money realized by an assignee and applied on the note from a collateral security assigned by Laidley would constitute no demand against Quarrier, Laidley being liable before Quarrier. (p. 312.)

2. EVIDENCE.

Quarrier being dead, Laidley can not give evidence against Quarrier's estate of a personal transaction with Quarrier to show that in fact Quarrier became bound as joint promisor with, or guarantor for, the Splint Coal Company, because of his incompetency under section 23, c. 130, Code. (pp. 314, 315.)

3. STATUTE OF LIMITATIONS—NEW PROMISE.

A promise to pay the "agreed balance on your judgment" is not good as a new promise, the amount of such agreed balance not appearing. If such balance refer to one thereafter to be agreed upon, and it does not appear that any balance was agreed, the promise is inoperative. (p. 316.)

4. STATUTE OF LIMITATIONS—NEW PROMISE.

A new promise must not be uncertain. It must acknowledge a fixed sum, or a balance which admits of ready and certain ascertainment. (p. 316.)

*Flournoy & Price* and *J. M. Laidley,* of counsel for appellants cited 22 How. 341 ; 50 Otto 90 ; 10 W. Va. 470 ; 13 Ill. 682 ; 44 Me. 443 ; 9 Gray 337 ; 5 Munf. 352 ; 4 Call. 503, 504 ; 9 Leigh. 473 ; 2 Rob. (New) Pr. 270, 276, 281, 490, 491, 493 ; 61 Am. Dec. 507 ; 7 Gratt. 189 ; 18 W. Va. 274 ; 2 Tex. 541 ; 4 Pick. 110.

*G. S. Couch* and *Mollohan & McClintic* for appellee cited 14 W. Va. 211.

BRANNON, JUDGE:

In a chancery suit brought by Lewis, administrator of William A. Quarrier, deceased, against the widow and heirs of Quarrier, to administer his estate, two demands against said estate were presented—one by George S. Laidley as assignee of James M. Laidley, the other by J. H. Grogan; and, the same having been disallowed by the Circuit Court of Kanawha county, said Laidley and Grogan have appealed to this Court.

*First,* as to the Laidley debt. James M. Laidley conveyed land to the Splint Coal Company; and for part of the purchase-money that company executed to Laidley a note for one thousand, seven hundred and seventy two dollars and twenty five cents, dated 29th December, 1870, payable three years after date. On the back of this note are— *First,* the signature of the payee, James M. Laidley; and, *second,* the name of William A. Quarrier; and James H. Brown became its owner as assignee, and he assigned it to J. F. Brown, and he obtained a judgment upon it against the Splint Coal Company, and issued execution, which was returned unsatisfied.

James H. Brown had recovered a judgment against James M. Laidley, and James M. Laidley was owner of a certain judgment in favor of Pierce against Clarkson; and, before James Brown became owner of the Splint Coal Company's note, Laidley had assigned to Brown one half of this Pierce-Clarkson judgment as collateral security for the judgment in favor of Brown against Laidley, and J. F. Brown collected half of the Pierce-Clarkson judgment, six hundred and twenty seven dollars and ninety two cents, and he applied that sum as a partial payment on said note of the Splint Coal Company, or rather on the judgment on it. Afterwards, James F. Brown assigned the said note to Benjamin Brown, and he filed his claim for the said debt, subject to the said credit of six hundred and twenty seven dollars and ninety two cents, and it was allowed him against Quarrier's estate.

J. F. Brown executed a writing reciting that J. N. Clarkson and J. M. Laidley were judgment-debtors of James H. Brown, and that Laidley had assigned, as addi-

tional security to Brown, half of a judgment in the name of Samuel Pierce against Clarkson, and that Brown had accepted notes of the Splint Coal Company to Laidley for the amount of Brown's judgment against Laidley, one of which notes had been assigned by James H. Brown to J. F. Brown, on which note he had recovered judgment, and that James M. Laidley had afterwards assigned said Pierce judgment to G. S. Laidley, subject to the assignment of one half of it to James H. Brown, and that J. F. Brown had collected and appropriated the said half, amounting to six hundred and twenty seven dollars and ninety two cents, to the judgment so recovered by J. F. Brown against the Splint Coal Company, by reason whereof J. M. Laidley or his assignee was entitled to substitution to said Brown's rights in said judgment *pro tanto;* and therefore said J. F. Brown assigned to George S. Laidley, assignee of J. M. Laidley, six hundred and twenty seven dollars and ninety two cents of said judgment against the Splint Coal Company last to be paid on the same, it being the intent to substitute Laidley in the shoes of Brown to the extent of said credit of six hundred and twenty seven dollars and ninety two cents. This sum of six hundred and twenty seven dollars and ninety two cents was the demand so presented in this suit by George S. Laidley, as assignee of James M. Laidley, against Quarrier's estate. The balance of the note, after crediting the six hundred and twenty seven dollars and ninety two cents, was decreed to Benjamin Brown.

Quarrier's estate defended said demands under the statute of limitations. Now, viewing the note only, and the two names—James M. Laidley first, and Quarrier second—indorsed on it, we would have to say that James M. Laidley assigned it to Quarrier, and Quarrier to Brown, and that when Laidley's money, collected by J. F. Brown from the Pierce-Clarkson judgment, went to the partial payment of the Splint Coal Company's note, it was only Laidley's paying a liability of his own as first assignor of that note, and creating no liability on Quarrier, as the ultimate liability would be on Laidley to Quarrier's immunity. The paper is non-negotiable, and Laidley is liable as first assignor;

Quarrier after him as second. So it would be if the note were negotiable. That we are to regard them as liable in such light and order is confirmed by a paper signed by James M. Laidley, by Quarrier, and the Splint Coal Company, whereby they, in consideration of indulgence upon said note, describing it as "executed by the Splint Coal Company for one thousand, five hundred and seventy two dollars and twenty five cents, with interest from date, payable to James M. Laidley, and by him indorsed and transferred to William A. Quarrier, and by him indorsed and transferred to J. H. Brown," agreed to waive objection to indulgence, and not to plead the same or take advantage of it in any litigation that might arise in the enforcement of the note, "whether against the maker, indorsers, or assignors thereof."

The fact that Quarrier was assignor is also confirmed by a paper signed by Quarrier 1st November, 1879, agreeing not to take advantage of "any indulgence that may be given the principal debtor, or any assignor or indorser of the bond herein described and referred to, and not to plead the statute of limitations to any action that may be brought against me upon my assignment upon said bond;" here expressly calling his own relation to the paper. "my assignment."

It is, too, not unreasonable to say that as Laidley owed Brown the lien on the land, and was bound to remove it, as between him and the company, and Brown would only take the coal company's note if indorsed by Quarrier, it was only intended that Quarrier should guarantee for Laidley—that is, become assignor, and thus satisfy Brown's demand for indorsement. Laidley was paying his own debt. Why may he not have asked Quarrier to guarantee for him? At any rate, why may not Quarrier have intended to be only bound as assignor?

But the claim of Laidley is that in fact Quarrier's liability is, not what the note and said writing would make it, but that he is a joint promissor with the Splint Coal Company in said note, or a guarantor thereof to Laidley; and he would support this claim on these facts: On 17th December, 1870, James M. Laidley sold to J. P. Hale "and

associates" two tracts of land at one hundred thousand dollars, three thousand dollars of which was in cash, thirty five thousand dollars to be paid on liens existing against the land, and the balance in future installments. The associates of Hale in this purchase were William A. Quarrier and H. Clay Dickinson. Hale, Quarrier and Dickinson, with two others, as incorporators, were on 21st December, 1870, incorporated as the Splint Coal Company, and directed Laidley to make the deed for the land to that corporation. They were also large stockholders. At this time James H. Brown held judgments against Laidley, binding the land sold, and, to relieve the land of the lien, it was agreed between the parties that Laidley should propose to assign to Brown three notes of the said company, indorsed, respectively, by Hale, Dickinson, and Quarrier, for the amount of said judgment-liens, if Brown would release them; Brown agreeing, said Splint Coal Company made three notes of one thousand five hundred and seventy two dollars and twenty five cents each, payable to James M. Laidley at two, three, and fours years, one of which was indorsed by Hale, one by Dickinson, and one by Quarrier, the last named being the one involved in this case, and all indorsed by James M. Laidley first in order of indorsement; and they were then delivered to James H. Brown by Laidley, whereupon Brown released the judgments.

If these be the facts, Quarrier might be liable for the note as joint promisor or guarantor, according to the time of his signing or the understanding between the parties. *Burton* v. *Hansford*, 10 W. Va. 470; *Powell's Case*, 11 Gratt. 822. But why may it not as well or rather be said that he intended to assume as assignor only? If we could take this view of the case under the evidence, then it would be a question, not here considered, whether the demand ought not to be characterized as one for money paid by Laidley to the use of Quarrier, and barred by five years from 17th August, 1882, when the six hundred and twenty seven dollars and ninty two cents was paid.

But the facts necessasy to make him a joint promisor or guarantor, and change his liability from what plainly, from the papers, it appears to be, are to be made out by the evi-

dence of James M. Laidley; and that is incompetent against a dead man's estate, by section 23, c. 130, Code. James H. Brown only says that he had "the impression that Mr. Quarrier was indorsing for the company," but disavows personal knowledge, and states no facts adequate to sustain the theory that Quarrier was anything else than what he appears to be—an assignor—even if his evidence were admissible, which may be questioned, viewing the matter from the standpoint that Quarrier was a joint promisor. And, anyhow, his evidence does not negative the theory that Quarrier was to be liable as assignor.

If we could say that, though the note is not negotiable, yet, as said paper, signed by the parties, treated Laidley and Quarrier as indorsers, and thus made them such, and that the word "indorser" is not simply descriptive, then Quarrier would be second endorser, and not liable.

I have said that the theory of the appellant is dependent on the incompetent evidence of James M. Laidley. Even if we concede that the sale of the land by Laidley to Hale "and associates" made Quarrier liable for the purchase-money, and of it this note is for part, yet the argument that as Quarrier participated in the consideration since the note was given to pay a debt for which he was bound, that fact goes to show that Quarrier was not a second assignor or indorser to accredit Laidley, but a joint promisor with the Splint Coal Company, is not at all sufficient to establish the relation of joint promisor for the following reasons:

1. If so liable for purchase-money under the purchase by Hale, the land was conveyed to the corporation, and its notes taken for the purchase-money, thus closing or ending the executory contract. 2. It is just as reasonable to say, if Quarrier was bound to Laidley for purchase-money, he would endorse his name on the company's note in the character of an assignor, as to say that he did so as joint promisor. Brown would thus hold the coal company bound as maker, and Laidley and Quarrier as assignors.

So, unaided by Laidley's evidence, I do not see how we can sustain the theory that Quarrier was joint promisor or guarantor. Laidley's statements may be in fact true, though they are not borne out by the appearance made by

the papers, for confessedly the papers speak a different language; but he can not be heard. The burden of proof is on the appellant to sustain his contention.

Of course, as Quarrier's agreement not to plead the statute is in terms a promise not to plead it in any action brought on his assignment, it has no application in favor of James M. Laidley for the money paid by him through his Pierce-Clarkson judgment, Laidley being first assignor and bound to save Quarrier. And if the demand of Laidley were viewed as for money paid to the use of Quarrier, the new promise would not apply, because it was only an undertaking not to plead it in an action against him as assignor, and the law would not extend it further than he himself made it. We hold that Quarrier's estate is not liable.

*Second,* as to the Grogan debt. This was a judgment for Grogan against Hale and Quarrier for eight hundred and fifty two dollars and twenty five cents, rendered 19th October, 1876. The only execution was returnable February rules, 1877, and was returned, "No property found." More than ten years elapsed from its return day until this suit was brought. But it is sought to repel the bar of the statute of limitations by a letter written by Quarrier to Grogan saying: "I have received both of your letters, but I have so much to pay that I had to have time to consider. I will pay you the agreed balance on your judgment on the 2d day of January next, at my office, at 12 o'clock."

This letter identifies the judgment, and, were it not for the word "agreed," would be a new promise to pay it. It was already barred, and he was not bound to pay, except as he should choose. He does not say that he would pay the balance of the judgment, but the "agreed balance." This imports that they had before that agreed upon an amount to be paid, but, if so, what amount does not appear. The new promise can not operate, because of want of certainty as to amount, in the absence of that amount appearing.

It strikes me that the letter meant that Quarrier had been considering whether he would pay anything at all, and concluded that, if he and Grogan could thereafter agree upon an amount, he would pay that, and desired him to

come to his office to confer upon it. This would be a conditional promise to pay; that is, if they should agree, and, moreover, uncertain as to amount, in the absence of an actual agreement on the amount. A promise to pay upon condition is not sufficient unless the condition is performed. 1 Rob. Pr. (New) 524; Ang. Lim. § 235. A promise to settle is not good as a new promise. *Bell* v. *Crawford,* 8 Gratt. 110. On similar reasoning we can say that a promise to pay a balance not defined, but to be agreed on or settled in future, will not constitute a new promise. The new promise must not be vague, indefinite, uncertain. *Bell* v. *Morrison,* 1 Pet. 362; 1 Rob. Pr. (New) 522.

The court makes the debtor re-promise no further than he intends to do, and does. He must "acknowledge a fixed sum, or at least a balance which admits of a ready and certain ascertainment." *Huff* v. *Richardson,* 19 Pa. St. 389.

In *Aylett* v. *Robinson,* 9 Leigh 45, PARKER, J., said: "The promise ought to be such a one as, if declared upon, would support an action of itself; that is, it must be an express promise to pay, or such an acknowledgment of a balance then due, unaccompanied by reservations or conditions."

I take it that a declaration on this letter, averring a promise to pay an agreed balance, without showing that such balance had been agreed and its amount, would not be good.

In *Sutton* v. *Burruss,* 9 Leigh, 381, the debtor admitted the debt, but claimed offsets; and his promise was held not a new promise, because he did not admit an ascertained balance.

In this case Quarrier admits the existence of the judgment merely, and promises to pay a balance which had been agreed, the amount of which we do not know, or one to be ascertained and agreed upon thereafter, which never has been done. How do we know what credits or offsets were to enter into it? It will not do to say, as is contended by appellant's counsel, that we simply take the face of the judgment, apply credits, and the balance answers the demand of Quarrier's letter. It says "agreed balance." The word "agreed" would be useless if he meant only that. It is evident that Quarrier did not intend to pay all the

judgment; for afterwards he writes to Grogan: "Inclosed find check, two hundred and fifty dollars. I have heretofore paid Swann three hundred and fifty dollars, making six hundred dollars, which is as much as I ought to pay on that 'old dry.' But you will observe that I did not make the check in full." The latter clause only indicates that he left it open so that Grogan might collect something from the other debtor, or that he would hold the question of further payment subject to his future will; and is not claimed to be a new promise. That he speaks of Grogan not coming down confirms the idea that "agreed balance" in the former letter meant a balance to be agreed on conference. So, I think the Grogan debt was properly rejected.

For these reasons the decree is affirmed.

AFFIRMED.