*In Re*: ESTATE OF SALLIE D. KNEEREAM, *Deceased,*
H. H. BROWN, *Plaintiff in Error.*

(No. 8721)

Submitted April 26, 1938.   Decided May 3, 1938.

*Lee, Blessing & Steed,* for plaintiff in error.

*Russell, Hiteshew, Adams & Randolph,* for defendant
in error.

HATCHER, JUDGE:

July 29, 1922, Sallie D. Kneeream, now deceased, exe-
cuted a negotiable note for $4,000.00, payable to claim-
ant, H. H. Brown, one year from date.   Two payments
only were made on the note; $104.00 on May 30, 1930,
and $250.00 on May 30, 1933.   Mrs. Kneeream died in
January, 1934, testate.   Her will directed payment of

her debts, but made no specific reference to the note. Claimant filed his claim for balance due on the note in 1935. The executors of decedent pleaded the statute of limitations. The plea was sustained by the circuit court.

Claimant contends that the effect of the statute of limitations was nullified by (1) the partial payments on the note, and (2) the testamentary direction to pay debts.

1. The ancient common law of England did not limit the time for bringing an action on a contract. *Williams* v. *Jones*, 13 East 449. The first limitation thereon was 21 James, ch. 16, section 3, enacted in the year 1623, which provided that the action must be brought within six years after the right accrued, "and not after." The statute itself contained no exceptions; but in the course of years it was relaxed by judicial construction to exclude "first an acknowledgment by words only; secondly, a promise by words only; and thirdly, part payment of principal or interest." Lord Campbell in *Cleave* v. *Jones*, 6 Ex. 573, 578-9. The statute of James was re-enacted in most, if not all, of the states with little, if any, variation, except as to the period of limitation. (Five years in Virginia. Rev. Code, 1819, Chapter 128, section 4.)

In 1828, Parliament took notice of the practice of excluding certain cases from the operation of the statute of James, and enacted that in actions on contracts, "no acknowledgment or promise by words, only, shall be deemed sufficient evidence of a new or continuing contract * * * unless such acknowledgment or promise shall be made or contained by or in some writing to be signed by the party chargeable thereby; * * * provided always that nothing herein contained shall alter or take away or lessen the effect of any payment of any principal or interest made by any person whatsoever." 9 George IV, Chapter 14, preamble and section 1. This statute was held plainly to leave "the effect and proof of payment exactly as it was before the statute." *Cleave* v. *Jones*, *supra*. The substance, if not the letter, of this statute, together with its construction by the English courts,

was adopted in all of the states except Virginia, and a few others, which omitted entirely the saving provision in favor of part payment. Acts Virginia, 1838, chapter 95, section 1. (The statement of Woods, Limitations, section 96, that this provision "has been expressly preserved * * * in all the statutes of a similar character in the States of this country except Nevada," is erroneous.) The revisors of the Virginia Code of 1849 expressed their opinion that the provision had been wisely omitted in the Act of 1838, and continued its omission. 1 Robinson's Practice (1854), 578. The West Virginia statute, Code, 55-2-8, is taken practically verbatim from the Virginia Code of 1860, chapter 149, section 7. In a case where the debtor or his agent, by writing, has promised payment, section 8 annuls the prior effect of 55-2-6, the statute of limitations. To prevent possible misconstruction, section 8 further provides: " * * * but no promise except by writing as aforesaid shall take any case out of the operation of the said sixth section, or deprive any party of the benefit thereof."

Claimant relies especially on Woods, Limitations, section 105, which makes the broad assertion that partial payment upon an obligation before the statute has run, "suspends the operation of the statute from that date and starts it afresh." This generalization applies under the many statutes which retained the proviso of George IV, preserving the common law effect of such a payment, but not under the few statutes, like that of the Virginias, which omitted the proviso. This distinction is remarked by Williston, Contracts (Rev. Ed.), section 174. Part payment of a debt, alone, can at most only imply a promise to pay the remainder. *Bell* v. *Crawford*, 8 Gratt. (Va.) 110, 130. Since that implication is not in writing and signed by the debtor, or his agent, such a payment does not affect the statute of limitations, under a countervailing statute phrased like ours. *Pena* v. *Vance*, 21 Cal. 142, 149; *Parsons* v. *Carey*, 28 Iowa 431; *Wilcox* v. *Williams*, 5 Nev. 206; *Holland* v. *Chaffin*, 22 Ga. 343; *Perry* v. *Ellis*, 62 Miss. 711; *Bell* v. *Crawford*,

*supra; Gover* v. *Chamberlain,* 83 Va. 286, 5 S. E. 174; *Becker & Co.* v. *N. & W. Ry. Co.,* 125 Va. 558, 560, 100 S. E. 478. The last citation holds unequivocally, "Under the Virginia statute of limitations, the partial payment of debts already due, does not affect the running of the statute or operate to create a new cause of action." This rule was treated as concessum by this court in *Findley* v. *Cunningham,* 53 W. Va. 1, on page 11, 44 S. E. 472.

2. The will subjected the residue of the estate of testatrix to payment of "all indebtedness, if any, standing against my farm." There was no lien indebtedness against the farm. Claimant proved that the note was for money borrowed to purchase interests in the farm, and that the testatrix regarded the note as an indebtedness against it. Article 2 of chapter 55 of the Code is the article on limitation of actions. Section 10 of that article follows: "No provision in the will of any testator devising his real estate, or any part thereof, subject to the payment of his debts, or charging the same therewith, shall prevent this article from operating against such debts, unless it plainly appear to be the testator's intent that it shall not so operate." This section was also derived from Virginia. See Code 1860, chapter 149, section 9. The Supreme Court of that state construed the section as follows: "This is in effect a legislative declaration that all the provisions of that chapter in regard to the limitation of actions shall apply in favor of the testator's debts, although there is a devise of real estate for their payment, unless it plainly appear that the testator otherwise intended. The devise is not of itself sufficient evidence of the intent. It must appear from some provision or phrase, independent of the devise, which indicates the purpose of the testator. * * * When the charge is for the payment of debts generally, the testator has no reference to any particular debt." *Johnston* v. *Wilson's Admr.,* 29 Gratt. 379, 387. Accord: *Coles' Exr.* v. *Martin,* 99 Va. 223, 37 S. E. 907. There is nothing exceptional about this construction, it being in accord with the general rule that in order to revive

a barred debt, the new promise must not be uncertain or indefinite. "It must be so distinct and unambiguous as to remove hesitation in regard to the debtor's meaning." *Palmer* v. *Gillespie,* 95 Pa. 340, 40 Am. Rep. 657. Accord: *Quarrier's Admr.* v. *Quarrier's Heirs,* 36 W. Va. 310, 15 S. E. 154. The charge attempted in the instant will, to-wit, of "all indebtedness, if any", against the farm, is general and indefinite. Consequently, the will did not revive claimant's right of action. Even prior to the enactment of the above statute in Virginia, the doctrine was said to be "settled", that a general clause in a will for payment of debts, operated "only in favor of debts not barred at testator's death." Robinson, *supra,* 570; *Johnson* v. *Wilson, supra,* 384. The instant claim was so barred.

The judgment is affirmed.

*Affirmed.*